## KERN v SCHWINKE

Common Pleas Court, Jackson Co.

No. 11239.  Decided Jan. 8, 1940.

Thomas H. Monger, for plaintiff and contestor.

Harry B. Reese, Wellston, for defendant and contestee.

## OPINION

By EVERETT, JR., J.

In this case the plaintiff and contestor, Roscoe Kern, seeks to contest the validity of the election for mayor in the village of Oak Hill, Jackson County, Ohio, which was held on November 7, 1939. The contestor alleges that he and the contestee, E. A. Schwinke, were the candidates for the office of mayor; that the defendants, John Shook, Thurman McGhee, Joe P. Gallagher, A. D. King, and William E. Peters, as the Board of Elections of Jackson County, Ohio, made an official canvass of the votes cast in the Village of Oak Hill, Ohio, in said election, and that as a result of their canvass declared the contestee, E. A. Schwinke, duly elected to the office of mayor of said village; that the contestee, E. A. Schwinke, received three hundred twenty-two (322) votes, and the contestor received three hundred twenty-one (321) votes.

Contestor further alleges that he made application for a recount of the ballots cast in said election in the Village of Oak Hill, and that on November 21, 1939, the defendant, The Board of Elections, conducted the recount, and on November 28, 1939, announced that after the official recount the votes cast for the office of mayor of the Village of Oak Hill were as follows: E. A. Schwinke, 322, Roscoe Kern, 321; that the board thereupon declared contestee, E. A. Schwinke, duly elected as mayor of the Village of Oak Hill for the term beginning January 1, 1940.

Contestor by his petition appeals from the said declaration so made and announced by the Board of Elections of Jackson County, Ohio, and alleges that in said election there were more votes duly and legally cast for contestor than were cast for the contestee.

Contestor claims that ballots were counted for contestee in both of the precincts of the Village of Oak Hill which contained, in addition to the cross marks before the contestee's name, other marks which made it possible to identify the person who cast such ballots; that ballots in both precincts of the Village of Oak Hill were counted for contestee which were marked with check marks and other marks entirely unlike cross marks; that ballots in both of the said precincts were counted for contestee which were marked with check marks placed to the right of contestee's name; that in precinct one, one ballot was counted for contestee which was marked with a cross mark covered by filling the rectangular space for such mark with numerous pencil lines before contestor's name, which ballot contained only a check mark before the contestee's name; that in precinct two, one ballot was counted for contestee which was marked for contestee by placing to the left of his name three pencil lines which were not cross marks or check marks and were covered and erased by additional marks and smears; that in both precincts ballots were counted for contestee which, in addition to the marks thereon, were defaced and soiled by reason of holes punched through the ballots.

Contestor also alleges that William J. Jenkins and his wife, Anna Jenkins, were permitted to vote their ballots in an automobile near the voting place of the precinct. Since there was no evidence of any character offered by contestor to support this allegation in the petition, the same will not be further considered.

Contestor also alleged that Joe Windon, John V. Morgan, Wendell Morgan and Hallie Morgan, his wife, voted in the Village of Oak Hill, Ohio, in the November election, 1939, and that at said date they were not legal residents in said Village, and hence not qualified to vote.

No evidence was introduced as to the residence of Joe Windon. Since there was no evidence offered relative to this allegation, the same will not be further considered. The legality of the votes of John V. Morgan, Wendell Morgan and Hallie Morgan will be discussed later in the opinion.

Contestee filed an answer in which he admitted the allegations as to the result of the vote in the Village of Oak Hill and that the election board had canvassed and certified the same as alleged in contestor's petition, and that a recount was had as averred in contestor's petition, and further denied each and every other allegation contained in said petition.

The issues made up by these pleadings are, whether or not the election in the Village of Oak Hill, as announced and certified by the Board of Elections of Jackson County, Ohio, was true and correct, the contestor claiming that there were certain ballots counted wrongfully, some of them being marked improperly according to the allegations of the petition, and some of the voters being illegal residents of the precincts in which they voted. It might be stated at this point that during the recount which was held by the Board of Elections of Jackson County, Ohio, two of the improperly marked ballots were sent to the Secretary of State, the Board of Elections being unable to agree as to how said ballots should be counted. The Secretary of State counted both ballots for the contestee, E. A. Schwinke.

In a contest proceedings, the action of the election officers in conducting the election, and in making and canvassing the returns and declaring the result thereof, is attended with a prima facie presumption of regularity. Similarly, the fact that a person has voted gives rise to a presumption that he was legally qualified to vote, in the absence of evidence to the contrary. **Dittrick v Andrews, 7 Oh Ap 363; Wickham v Coyner, 12 O. C. C. (N.S.), 433; Esker v McCoy, 5 O. Dec. (Rep.) 573; 15 O. Jur. 440.** Also, in an election contest proceeding, the burden of proof rests upon the contestor to establish his claims. It is stated in 20 C. J. 240,

"Where an election is contested on the ground of illegal voting, the contestor has the burden not only of showing that sufficient illegal votes were cast to change the result, but he must also show by whom and for whom they were cast."

See also, **Dittrick v Kelly, 20 O. N. P. (N.S.) 86.**

The election laws contain detailed provisions as to the method and manner of marking ballots. Some of such provisions are held to be mandatory in character and others merely directory. The statute provides certain general rules to be observed in determining the validity of ballots, as affected by the manner in which they are marked, namely: (1) No mark shall be made on a ballot which would in any way enable any person to identify the voter. (2) No ballot shall be counted which is marked contrary to law. (3) No ballot shall be rejected for any technical error unless it is impossible to determine the voter's choice. The first of these general rules, which is designed to secure purity in elections through the maintenance of the secrecy of the ballot, and the third, which is intended to make effective the honest voter's indication of his choice, notwithstanding technical defects and irregularities, are directly opposed to each other insofar as concerns their application in the determination of the character and effect of particular marks. This fact makes their application in certain cases a matter of considerable difficulty, and accounts for at least a considerable number of the divergent holdings of the Courts on

particular points. It is obviously impossible to give effect, affirmatively, to both of such provisions in any particular instance, and it can be readily understood that the question as to which shall be given the precedence may, in many instances, properly depend more upon the surrounding circumstances than upon the nature or character of the particular marks in question. However, where a ballot is so marked that the intention of the voter is evident, and no mandatory provision of the statute is thereby violated, the fact that such marking does not conform to the manner prescribed in the statute will not render the ballot invalid, and it should be counted in accordance with the intention so indicated. **Thompson v Redington, 92 Oh St 101; Richwood v Algower, 95 Oh St 268; Board of Elections v Henry, 25 Oh. Ap 278; State ex Bambach v Markley, 9 O. C. C. (N.S.) 561,** affirmed without opinion in **76 Oh St 636.**

In the case of State ex Bambach v Markley, the Court used the following language:

"It is a rule of construction laid down by all text writers upon the subject of counting votes that the primary step is to determine, if possible, the intention of the voter, and where that can be done, no vote should be thrown out. This would seem to be a just rule as we all know that a great many people in this country give but little attention to the manner of voting under the Australian ballot, and especially where it is desired to vote a mixed ticket, and that a great deal of confusion has arisen. The Courts therefore, have construed all Australian ballot laws in a liberal manner. In obedience to this rule of construction, if from an inspection, and from the evidence, it is possible to determine the intention of a voter, you must do so. In other words, if it is possible, in the language of the statute, for us to determine for whom he is intended to vote, it is our solemn duty to preserve that vote."

The provisions relative to the use of a cross mark as a means of indicating the voter's choice have been generally construed as directory only. The use of more than one line, either verticle or horizontal or both, in the making of a cross mark, has been held not to invalidate the ballot. See Thompson v Redington, supra, and **Williams v Barker, 4 O. N. P. (N.S.) 596.** Also, the requirement that the cross mark be placed in the blank space to the left of the name of the candidate voted for has been generally construed as directory. Richwood v Algower, supra.

With respect to the provision prohibiting the use of identifying marks, the general rule, as established by the more recent decisions, is that it applies only to marks intentionally made for the purpose of providing a means for identifying the voter, and has no application to marks made only for the purpose of indicating the voter's choice of candidates, although they may not conform to the method of marking prescribed by statute, or to marks made merely through mistake or inadvertence. Thompson v Redington, supra; **Newman v McManis, 10 O. D. (Rep.) 730.** It is stated in 20 C. J., 163, that

"While a voter endangers secrecy of his ballot by placing any writing or marking other than a cross mark or cross in the manner provided by law, ballots should not be rejected as having distinguishing marks on account of a slight irregularity in the manner of marking unless it is clear that the voter intended it as a mark of identification. It is generally held that, when a ballot contains other than legal marks, such marks will be presumed to be innocently or unintentionally made, and such ballot will be counted, unless it appears from the marks themselves or by evidence aliunde that the marks were intended as distinguishing marks."

The Court has examined all of the ballots introduced in evidence both by

the contestor and the contestee, and it is the opinion of the Court that all of said ballots properly show the intention of the voter to vote for the candidates marked. Contestor's Exhibit 1, which was one of the ballots submitted to the Secretary of State, clearly shows the intention of the voter to vote for E. A. Schwinke, and since the evidence does not show an intention on the part of the voter to identify the ballot, the same is held to be legal and in conformity to the above stated rules of law. It is impossible to say whether the smudge on said ballot was made by the voter attempting to erase the pencil mark or whether said smudge was placed there by an election official or some other person handling the ballot. Contestor's Exhibit 2 indicates that the voter obviously intended his choice for mayor to be E. A. Schwinke, and the fact that pencil markings appear to the left of the contestor's name does not indicate an attempt to identify the voter of the ballot. As to the other ballots which were introduced in evidence, both by the contestor and contestee, it is apparent from an examination of all the ballots that the voter intended to vote for the choice indicated thereon. The additional markings appearing on said ballots could have been placed there by the voter in his attempt to make his mark for the candidate of his choice or could have been placed there through inadvertence or mistake. There being no evidence of the intention of any voter to make a distinctive marking on his ballot, the Court holds all of said ballots to have been legally counted. The fact that all of these ballots have previously been counted by the precinct election officials of the Village of Oak Hill and the Board of Elections of Jackson County, Ohio, is an indication in itself that the intention of the voters of said ballots was apparent and manifest. The Court, therefore, holds that all of the ballots introduced in evidence as exhibits were properly counted for the persons indicated thereon.

Counsel for the contestor contends that the votes of John V. Morgan, Wendell Morgan, and Hallie Morgan were illegal for the reason that said voters did not reside in the Village of Oak Hill. With reference to John V. Morgan, the only testimony introduced on behalf of contestor was that of George Griffiths who testified that Morgan had been eating some of his meals and sleeping some nights at his home; that there was some arrangement between Morgan and the witness's wife as to payment of board. The witness testified, however, that Morgan owns a house in the Oak Hill village limits; that he has clothing and furniture in said house and that he changes clothes there in the morning and evening; that he has the gas, electricity, and water connected, and that he stays there often when not working; that he sleeps there some at nights and eats some of his meals at his house; that said house is not for rent or for sale, and that he generally has a garden planted on the lot; that he gets his mail in the Village of Oak Hill, and was elected a member of the Republican Central Committee in said precinct at the Primary Election in 1938. John V. Morgan was called to the witness stand and during the time he was on the stand he was not asked any questions as to his residence. From this evidence it cannot be said that John V. Morgan is not a resident of the Village of Oak Hill. The Court feels that from a preponderance of the evidence introduced that John V. Morgan is a legal resident of the Village of Oak Hill.

Evidence was introduced as to the residence of Wendell Morgan and Hallie Morgan, husband and wife. Arch Campbell, a surveyor, testified that part of the premises was in the Village of Oak Hill and part in Jefferson Township; that the garage and driveway were all in the Village of Oak Hill, and that the village and township line run along the foundation of the porch of the residence. However, the observation of the witness was based upon sighting by eye from a line established

about thirteen years ago and not by a survey at the present time. Wendell Morgan and Hallie Morgan were also called as witnesses by the contestor, but were not asked as to where their home was with reference to the dividing line between the Village of Oak Hill and Jefferson Township. It is said in 20 C. J., 70,

"Where the line dividing two election districts runs through an elector's home he is entitled to vote in the district in which the larger portion of his residence is situated."

It is also said in a recent Kentucky case,

"In some jurisdictions, however, if the precinct line runs through a voter's house, he may elect to vote in either precinct."

Annotation, C. J. 1927-1932, Page 1346; 210 Ky. 642; 276 S. W. 152. The Court feels, as to the voters, Wendell Morgan and Hallie Morgan, that ▮▮▮▮▮▮ the contestor has not proved by a preponderance of the evidence that they are illegal voters.

Indeed it would be impossible to determine from which candidate to deduct the votes of John V. Morgan, Wendell Morgan, and Hallie Morgan in the event they were determined to be illegal voters for the reason that each one of them refused to answer questions and testify on the witness stand as to whether they voted in the Village of Oak Hill at the November election, 1939, or for what candidate they voted. In doing so they relied upon their constitutional privilege not to testify or give evidence which would tend to incriminate them. After asserting said constitutional privilege on the witness stand the Court protected them in said assertion and refused to instruct them to answer any questions relative to voting. **Paul v Wills, 11 Abs 194.**

Counsel for contestor contended that the votes of John V. Morgan, Wendell Morgan, and Hallie Morgan should be determined to be illegal and the election be set aside for that reason, and

cited **15 O. Jur. 451, §111.** In that section the following language is used:

"Ordinarily, the trial and decision of of a contested election case, between of two persons who are rival candidates for the same office, involves the hearing and determination of all questions within the specified points of contest which affect the rights of the respective parties to the office in controversy, and necessarily a determination of those rights. It may be in certain cases that, for lack of compliance with the law, no valid election has been held; or that, when the election has been purged of frauds or mistakes neither party has received the votes necessary to his election; and in either case the contest ends in simply setting aside the election. But where one or the other of the candidates has been legally elected to the office, the decision should so declare, and put an end to the controversy; and the power to do so is included in the power to try and decide the contest, unless it is excluded by, or is inconsistent with, some express provision of the statute." **State ex Bachman v Wright, 56 Oh St 540.**

The Court, after a study of all the evidence in this case, finds that there has not been sufficient lack of compliance with the law to hold the election invalid, and that there has been no fraud or mistakes sufficient to hold said election invalid.

The Court, therefore, finds that there were no errors or mistakes in the counting of the ballots of said election, and that the result announced by the election board of Jackson County in its official canvass of the votes cast in the Village of Oak Hill, Jackson County, Ohio, in the election of November 7, 1939, for the office of mayor for the Village of Oak Hill, was a true and correct result, and that E. A. Schwinke received for the office of mayor three hundred twenty-two (322) votes and that the contestor, Roscoe Kern, received for the office of mayor three hundred twenty-one (321) votes. It is therefore ordered that contestee, E. A. Schwinke, is declared elected to the office of Mayor of the Village of Oak

Hill, and the contestor pay the costs of this proceeding.

An entry may be drawn accordingly.